UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

MICHAEL SCOTT,

                          Plaintiff,

          - against -

PROCLAIM AMERICA, INC. d/b/a "ESISProClaim,"
ESIS, INC., ACE GROUP HOLDINGS, INC.,
CARL FERDENZI, *Individually*,
HEATHER ROY, *Individually*, and
CANDACE KAINER, *Individually*,

                         Defendants.

------------------------------------------------------------------X

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
Case No.

★   OCT. 14 2014   ★

LONG ISLAND OFFICE

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

CV-14 6003

HURLEY, J
LINDSAY, M

Plaintiff, MICHAEL SCOTT, by his attorneys, PHILLIPS & ASSOCIATES, Attorneys at

Law, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1.    Plaintiff complains pursuant to the <u>Family and Medical Leave Act</u>, 29 U.S.C. § 2601, *et*

     *seq.* ("FMLA"), and the <u>New York State Human Rights Law,</u> New York State Executive

     Law §290, *et. seq.* ("NYSHRL"), and seeks damages to redress the injuries Plaintiff has

     suffered as a result of being **Discriminated against** and **Terminated** by his employer

     solely due to his **Disabilities (Cholesteatoma/Post-Concussion Syndrome)** and for the

     purpose of **Interfering with Plaintiff's rights under the FMLA**.

## JURISDICTION AND VENUE

2.    Jurisdiction of this Court is proper under 29 U.S.C. §2617, 28 U.S.C. §§ 1331 and 1343.

3.    The Court has supplemental jurisdiction over the claims of Plaintiff brought under state

law pursuant to 28 U.S.C. §1367.

4.    Venue is proper in this district pursuant to 28 U.S.C. §1391(b), as Defendants reside within the Eastern District of New York, and the acts complained of occurred therein.

## PARTIES

5.    That at all times relevant hereto, Plaintiff MICHAEL SCOTT ("SCOTT") is a resident of the State of New York and County of Nassau.

6.    That at all times relevant hereto, Defendant PROCLAIM AMERICA, INC. ("PROCLAIM") is a foreign business corporation, duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principle place of business located at 3100 S. Gessner, Suite 600, Houston, Texas 77063.

7.    That at all times relevant hereto, Defendant PROCLAIM does business as "ESISProClaim."

8.    That at all times relevant hereto, Defendant ESIS, INC. ("ESIS") is a foreign business corporation, duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principle place of business located at 436 Walnut Street, Philadelphia, Pennsylvania 19106.

9.    That at all times relevant hereto, Defendant ACE GROUP HOLDINGS, INC. ("ACE") is a foreign business corporation, duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principle place of business located at 436 Walnut Street, Philadelphia, Pennsylvania 19106.

10.   That at all times relevant hereto, upon information and belief, Defendant PROCLAIM, Defendant ESIS, and Defendant ACE are "integrated employers," as Defendant

2

PROCLAIM, Defendant ESIS, and Defendant ACE have common management, share financial control of all companies, share centralized control of labor relations, and share employees.

11. That at all times relevant hereto, Plaintiff SCOTT was a full-time employee of Defendant PROCLAIM, Defendant ESIS, and Defendant ACE.

12. That at all times relevant hereto, Defendant CARL FERDENZI ("FERDENZI") was an employee of Defendant PROCLAIM, Defendant ESIS, and Defendant ACE, holding the position of "Executive Vice President."

13. That at all times relevant hereto, Defendant FERDENZI was Plaintiff SCOTT's supervisor and/or had supervisory authority over Plaintiff SCOTT.

14. That at all times relevant hereto, Defendant HEATHER ROY ("ROY") was an employee of Defendant PROCLAIM, Defendant ESIS, and Defendant ACE, holding the position of "Claims Manager."

15. That at all times relevant hereto, Defendant ROY was Plaintiff SCOTT's supervisor and/or had supervisory authority over Plaintiff SCOTT.

16. That at all times relevant hereto, Defendant CANDACE KAINER ("KAINER") was an employee of Defendant PROCLAIM, Defendant ESIS, and Defendant ACE, holding the position of "HR Manager."

17. That at all times relevant hereto, Defendant KAINER was Plaintiff SCOTT's supervisor and/or had supervisory authority over Plaintiff SCOTT.

18. That at all times relevant hereto, Defendant PROCLAIM, Defendant ESIS, Defendant ACE, Defendant FERDENZI, Defendant ROY, and Defendant KAINER are collectively referred to herein as "Defendants."

3

19.  Upon information and belief, Defendants employ fifty (50) or more employees within a seventy-five (75) mile radius.

20.  In the alternative, in the event Defendants employed less than fifty (50) employees within a seventy-five (75) mile radius, Plaintiff SCOTT was nevertheless led to believe that Defendants were covered under the FMLA. In fact, Defendants told Plaintiff SCOTT that he qualified for, and was covered by, the FMLA, and even sent an FMLA form to Plaintiff SCOTT that confirmed his entitlement to FMLA leave, or would convince a reasonable person of FMLA eligibility.

21.  Plaintiff SCOTT was an "eligible" employee under the FMLA when he took his medical leave of absence, as he had been employed by Defendants for at least twelve (12) months and worked at least 1,250 hours within the past twelve (12) months.

22.  The FMLA defines an "employer" to include "any person who acts, directly or indirectly, in the interest of an employer to any employees of such employer." 29 U.S.C. 26114(A)(ii)(i).

23.  The Department of Labor regulations extend individually liability for FMLA violations to "corporate officers acting in the interest of an employer." 29 CFR 825.104(d).

## MATERIAL FACTS

24.  On or about December 15, 2005, Plaintiff SCOTT began working for Defendants as a "Senior Claim Director" at Defendants' office located at 35 Pinelawn Road, Melville, New York 11747, earning approximately $81,000 per year.

25.  As "Senior Claim Director," Plaintiff SCOTT was responsible for managing complex professional liability claims, including investigation, coverage determination, negotiation,

4

and settlement or trial strategies. Plaintiff SCOTT was also responsible for managing and attending all trials involving insured clients and thereafter responsible for generating comprehensive trial reports of each trial attended. As a result, Plaintiff SCOTT was in court and out of the office many days.

26.  Throughout Plaintiff SCOTT's employment with Defendants, Plaintiff SCOTT was an exemplary employee, was never reprimanded, and always received compliments for his work performance.

27.  **However, everything changed when Plaintiff SCOTT informed Defendants that he was diagnosed with "Cholesteatoma/Post-Concussion Syndrome,"** and as a result, would need a reasonable accommodation as well as take a medical leave of absence.

28.  In fact, Defendants **soon thereafter terminated Plaintiff SCOTT's employment** solely due solely to his disability and for the purpose of preventing Plaintiff SCOTT from being able to take a medical leave of absence pursuant to the FMLA.

29.  More specifically, by way of background, in or about November 2013, Plaintiff SCOTT fell and hit his head, after which he started developing severe headaches and dizziness.

30.  On or about December 7, 2013, Plaintiff SCOTT sent an email to Defendant FERDENZI, stating, "So I failed my neuro exam. Have to have CT scan this afternoon with contrast. Will let you know the results when I get them."

31.  Unfortunately, during this CT scan, Plaintiff SCOTT's doctor discovered a brain cyst and he was further referred to an ENT for an examination of his sinuses and ears.

32.  On or about December 8, 2013, Plaintiff SCOTT sent Defendant FERDENZI an email stating, "Bad result on CT. I might need some time..." Plaintiff SCOTT never received any response to this email.

33.  On or about the evening of December 11, 2013, Plaintiff SCOTT's ENT found a
     Cholesteatoma in Plaintiff SCOTT's left ear and immediately removed it. Cholesteatoma
     is a destructive and expanding growth consisting of keratinizing squamous epithelium in
     the middle ear and/or mastoid process. Although these are not strictly speaking tumors or
     cancers, they can still cause significant problems because of their erosive and expansile
     properties resulting in the destruction of the ossicles as well as their possible spread
     through the base of the skull into the brain. They are also often infected and result in
     chronically draining ears.

34.  As such, on or about December 11, 2013, Plaintiff SCOTT informed Defendant
     FERDENZI that his doctors found and removed a Cholesteatoma in his left ear. In
     addition, although Plaintiff SCOTT was still feeling dizzy and experiencing severe
     headaches, he nonetheless continued to perform his job duties without incident.

35.  However, on or about December 18, 2013, Plaintiff SCOTT sent an email to Defendant
     FERDENZI and Defendant KAINER in which he stated, "As discussed, I had surgery last
     Wed. to remove a tumor in my left ear. I have tried as best I could to work through the
     pain and dizziness since last week but am unable to do so. I am having residual problems
     and am unable to work. I am waiting on additional records to be referred to a further
     specialist. Three (3) new cases came in for Brooklyn and accordingly, I am dropping
     them off with you. Attached please find a PTO form. I will advise when I am medically
     cleared to return."

36.  As such, also on or about December 18, 2013, Plaintiff SCOTT asked Defendant
     FERDENZI if they could postpone a meeting originally scheduled for the following day
     as a reasonable accommodation for his disabilities. Plaintiff SCOTT knew that this

accommodation would have posed **no undue burden** to Defendants, as Plaintiff SCOTT had postponed and/or adjourned numerous other meetings with this client without ever having any problems.

37.   However, in response, on or about December 18, 2013, Defendant FERDENZI sent Plaintiff SCOTT an email in which he refused to provide Plaintiff SCOTT with any accommodation and stating, "You have been telling me all week you would have about 40 files done.  You are the one who said you could do it.  I never put pressure to do them all.  Now you say you are sick?  I will call them and go in to discuss the doc program. You need to work on this report and get it done asap.  You were fine all week." Plaintiff SCOTT was absolutely horrified to learn that Defendants were arbitrarily refusing to accommodate his disabilities and were actually accusing Plaintiff SCOTT of lying about his medical conditions.

38.   To make matter worse, on or about December 19, 2013, Plaintiff SCOTT was diagnosed with a **Left Ear Infection** as well as **Post-Concussion Syndrome**.  Post-concussion syndrome is a set of symptoms that may continue for weeks, months, or occasionally a year or more after a concussion – a mild form of traumatic brain injury.  The condition is associated with a wide range of symptoms: physical, such as headache; cognitive, such as difficulty concentrating; and emotional and behavioral, such as irritability.

39.   Later that same day, Plaintiff SCOTT informed Defendants of his diagnoses, and while Plaintiff SCOTT was hoping that Defendants would change their attitude and begin trying to accommodate him, he never expected Defendants to actively retaliate against him and further discriminate against him due to his disabilities.  However, that is exactly what occurred.

7

40.   The following day, on or about December 20, 2013, Defendant FERDENZI issued

Plaintiff SCOTT a wholly false and unreasonable Performance Written Warning stating,

> "This is to confirm our discussion concerning your job performance and to
> notify you that because of unsatisfactory performance, you are being
> placed on warning for a period of up to 90 days.  This action is being taken
> for the following reasons: *You had consistently advised me that you were
> preparing a copy of your report that would be needed for a meeting with
> Tire Brooklyn Hospital on 12/19/2013.  Despite the fact that you were
> sick you were in the office and following the Nyack meeting on Monday
> 12/16/2013, you advised you would have a report ready.  You continued
> to advise you would have the report on Tuesday when you were in the
> office all day.  On Wednesday 12/18/2013, the day before the meeting,* I
> *called and spoke with you at 5PM to arrange travel the next day and you
> advised you would not be attending because you were sick.  At no time
> did you advise me that you had not completed the report.  As a result I
> was put in a very untenable position with the client and had to meet with
> them unprepared.  This is the reason you are being cited.*  This warning
> period begins 12/23/2013 and ends March 31, 2014.    Failure to
> demonstrate immediate improvement in your performance or to meet and
> maintain the standards of this warning at any time during the warning
> period will result in termination of employment.  It will be necessary for
> you to meet and maintain the following standards during the warning
> period: You will report to me on a daily basis and advise and document the
> work you have completed for the day.   You are to refrain from walking
> around the office interrupting your fellow employees.  You are to refrain
> from just walking into my office to sit down and chat but will require to
> call me to see if I am available to discuss any business problems.  Any
> claims committee reporting must be completed a week in advance of the
> meeting and submitted to me and I will forward to the client.  All legal
> bills need to be reviewed and approved timely.  The month in which they
> are received.  Confirmation and evidence of this must be submitted to me.
> You are not to use your business computer and access to the internet for
> personal use.  During this warning period, we will meet weekly to discuss
> your progress.  During this performance warning period, you will not be
> eligible for a transfer or promotion and any merit increase will be deferred
> or denied based on your overall performance.  You will not be eligible to
> receive a bonus (if applicable) for the 2014 plan year.  Also, you may be
> subject to termination without further warning if the problem causing the
> imposition of this warning recurs at any time within twelve months
> following successful completion of this written warning period."

41.   It was obvious to Plaintiff SCOTT that Defendants had made false allegations against

him in a transparent effort to cover up the actual discriminatory reason for which Defendants wanted to terminate his employment.  Defendant FERDENZI knew that these were absolutely impossible requirements by which Plaintiff SCOTT had to abide, as Plaintiff SCOTT was in court many days and not even in the office.

42.  On or about December 26, 2013, Plaintiff SCOTT sent Defendant FERDENZI a response to the Performance Written Warning in which he stated, "This warning was given to me in retaliation for my request for an accommodation due to a medical disability.  I am requesting that you rescind this warning.  I have been treating with a PCP, neurologist, ENT and ophthalmologist since my initial injury/disability.  ...  In addition to the above, the following points relate to this retaliation: [Defendants] were first placed on notice of this medical disability on 12-7-13 via e-mail.  [Defendants] were advised that I might need time off for this medical disability on 12-8-13, also via e-mail.  [Defendants] verbally denied my request for time off and never responded to my email indicating that time off may be needed.  [Defendants] have discriminated against me due to a medical disability.  In addition to my regular clients and caseload I am often called upon, with little to no notice, to attend trials or Mediations on behalf of Ace Insurance Group.  These new requirements will be impossible to meet if I am called out of the office to attend Trials, Mediations et al."  Plaintiff SCOTT never received any response to this complaint of discrimination.

43.  As Plaintiff SCOTT's symptoms were not improving, on or about December 26, 2013, Plaintiff SCOTT also informed Defendants that he had no choice but to take a medical leave of absence, and even submitted a letter from his doctor stating, "[Plaintiff SCOTT] is suffering from post-concussion syndrome and advised no work at this time.  Patient

will follow up in ten days for re-evaluation. Patient has also seen an ENT, neurologist ad ophthalmologist who agree with above diagnosis. Any questions, please feel free to call."

44.     As such, **on or about December 26, 2013, Plaintiff SCOTT officially began his medical leave of absence**.

45.     On or about December 30, 2013, Plaintiff SCOTT received a letter from Defendants **approving his eligibility for FMLA leave** and confirming that Defendants have "a copy of your doctor's note on file" and have "sufficient certification to support your request for FMLA leave."

46.     On or about January 10, 2014, Defendant KAINER sent Plaintiff SCOTT an email that stated, "Please find attached the disability papers for the state of NY and Lincoln's Short Term Disability's papers."

47.     On or about January 16, 2014, Plaintiff SCOTT sent Defendant KAINER and Defendant ROY an email in which he wrote, "I'm heading over to the ENT this afternoon, so I hope to have some sense of where I'm heading in that regard. I actually have two (2) issues, one is the ENT issue and the other the Post Concussion so I may need two docs certs. Do we need just one or two?" Defendant KAINER never responded to Plaintiff SCOTT's email or questions.

48.     Then, the following day, on or about January 17, 2014, **a mere three (3) weeks after Plaintiff SCOTT began his FMLA leave**, Defendant ROY called Plaintiff SCOTT, and without even providing a reason, **suddenly terminated his employment**. In this same conversation, Defendant ROY stated that Defendants would provide Plaintiff SCOTT with a severance payment equal to one (1) month salary and eleven (11) remaining PTO days, as well as agree not to contest unemployment benefits, and provide a neutral

employment reference.  Defendant ROY then instructed Plaintiff SCOTT to send her an email memorializing everything that was discussed in the phone call.

49.   Accordingly, although Plaintiff SCOTT was distraught that Defendants terminated his employment due to his disability and for exercising his rights under the FMLA, Plaintiff SCOTT nonetheless immediately sent Defendant ROY an email stating, "Please allow this to confirm our call of this morning and confirm the termination of my employment as of today.  [Defendants] will pay me one (1) month severance in addition to the remaining eleven (11) PTO days that were accrued.   Additionally, you have confirmed that [Defendants] will not contest unemployment benefits and also, will provide a neutral employment reference going forward.  Kindly advise if this is an accurate portrayal of our conversation."  As Defendant ROY never responded to Plaintiff SCOTT's email, it was clear to Plaintiff SCOTT that Defendants had agreed with its contents.

50.   However, on or about January 21, 2014, Plaintiff SCOTT received a letter from Defendant ROY stating, "This letter will serve as our official notice to accept your resignation."  Plaintiff SCOTT was shocked to receive this, as Plaintiff SCOTT never resigned from his position but rather was terminated while he was on FMLA leave.

51.   Upon information and belief, upon learning that Plaintiff SCOTT was diagnosed with a Cholesteatoma as well as Post-Concussion Syndrome and would need to take a medical leave of absence, Defendants made the decision to terminate Plaintiff SCOTT's employment.

52.   **Thus, on or about January 17, 2014, it is clear that Defendants discriminated against, and terminated the employment of, Plaintiff SCOTT solely due to his disabilities and to prevent him from taking a medical leave of absence pursuant to**

11

the **FMLA.**

53.   Defendants arbitrarily refused to grant Plaintiff SCOTT a minor reasonable accommodation, even though it would have posed **no undue burden** to them.

54.   Plaintiff SCOTT felt exceedingly offended, disturbed, and humiliated by this blatantly unlawful, discriminatory, and retaliatory termination.

55.   Plaintiff SCOTT began his FMLA leave on or about December 26, 2013, and because Plaintiff SCOTT was entitled to at least twelve (12) weeks of leave, he was not required to return to his job until on or about March 20, 2014.  However, Defendants unlawfully terminated Plaintiff SCOTT's employment on or about January 17, 2014.  There is simply no legitimate reason for which Defendants could have terminated Plaintiff SCOTT's employment other than in retaliation for exercising his rights and actually going out on FMLA leave.

56.   Defendants obviously did not like the fact that Plaintiff SCOTT took FMLA leave, and thus unlawfully terminated his employment in retaliation.

57.   Defendants terminated Plaintiff SCOTT's employment because Defendants did not want to allow Plaintiff SCOTT to take the full twelve (12) weeks of leave for his serious health condition, in violation of the FMLA.

58.   Defendants failed to allow Plaintiff SCOTT to return to the same or equivalent position he held following his leave for serious medical condition.

59.   **But for the fact that Plaintiff SCOTT was disabled and exercised his rights under the FMLA, Defendants would not have terminated his employment**.

60.   Defendants clearly but falsely believed that Plaintiff SCOTT's disabilities would interfere with his ability to perform his job duties in the future.

61. Defendants were also apparently apprehensive about keeping a disabled employee due to potential future doctors' appointments and future accommodations.

62. Plaintiff SCOTT's conditions are medical impairments resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function, including but not limited to, neurological function.

63. Plaintiff SCOTT is a qualified individual who can perform the essential functions of his employment with a reasonable accommodation as defined by the NYSHRL.

64. Furthermore, Defendants never even attempted to engage in any interactive process to try and figure out the best way to accommodate Plaintiff SCOTT's disabilities so that Plaintiff SCOTT could continue his employment with Defendants.

65. Rather than discussing possible alternative ways to accommodate Plaintiff SCOTT's disability, Defendants figured it was easier to simply terminate his employment.

66. Plaintiff SCOTT's performance was, upon information and belief, above average during the course of his employment with Defendants.

67. Plaintiff SCOTT has been unlawfully discriminated against, humiliated, retaliated against, has been degraded, and as a result, suffers loss of rights, emotional distress, loss of income and earnings.

68. **Defendants' actions and conduct were intentional and intended to harm Plaintiff SCOTT.**

69. As a result of Defendants' actions, Plaintiff SCOTT feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

70. As a result of the Defendants' discriminatory treatment of Plaintiff SCOTT, he has suffered severe emotional distress and physical ailments.

13

71.    As a result of the acts and conduct complained of herein, Plaintiff SCOTT has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff SCOTT has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.  Plaintiff SCOTT further experienced severe emotional and physical distress.

72.    As a result of the above, Plaintiff SCOTT has been damaged in an amount in excess of the jurisdiction of the Court.

73.    Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.  As such, Plaintiff SCOTT demands Punitive Damages as against all Defendants, jointly and severally.

**AS A FIRST CAUSE OF ACTION**
**FOR INTERFERENCE AND RETALIATION UNDER**
**THE FAMILY AND MEDICAL LEAVE ACT**

74.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

75.    Section 2612(D) of the Family Medical Leave Act, states in pertinent part: "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period ... Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee."

76.    Section 2615(a) of the Family Medical Leave Act, states in pertinent part: "Interference with rights. (1) Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this

subchapter. (2) Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

77.    Defendants discriminated against Plaintiff in retaliation for exercising his rights under the FMLA and for the sole purpose of interfering with his rights under the FMLA.

78.    As such, Plaintiff has been damaged as set forth herein.

## AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION UNDER NEW YORK STATE EXECUTIVE LAW

79.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

80.    New York State Executive Law §296 provides that, "1. It shall be an unlawful discriminatory practice:    (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, … to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

81.    Defendants have engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his disabilities.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER NEW YORK STATE EXECUTIVE LAW

82.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

83.    New York State Executive Law §296(6) provides that it shall be an unlawful

discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

84. Individual Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory and retaliatory conduct.

## JURY DEMAND

85. Plaintiff requests a jury trial on all issues to be tried.


**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by the FMLA, and the NYSHRL, by discriminating against Plaintiff on the basis of his disabilities and then unlawfully terminating his employment due to his disabilities and in retaliation for exercising his rights under the FMLA;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and retaliation and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and

proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
October 9, 2014

                                        PHILLIPS & ASSOCIATES,
                                        ATTORNEYS AT LAW, PLLC

                            By:         _____
                                        Alex Umansky (AU7961)
                                        *Attorneys for Plaintiff*
                                        45 Broadway, Suite 620
                                        New York, New York 10006
                                        (212) 248-7431
                                        aumansky@tpglaws.com

17