UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MICHAEL SCOTT,

                              Plaintiff,                  **MEMORANDUM AND ORDER**
                                                                            14 CV 06003 (DRH) (ARL)

       - against -

PROCLAIM AMERICA, INC. d/b/a/ ""ESISProClaim,"
ESIS, INC., ACE GROUP HOLDINGS, INC.,
CARL FERDENZI, *Individually*,
HEATHER ROY, *Individually*, and
CANDACE KAINER, *Individually*,

                              Defendants.
------------------------------------------------------------X

**APPEARANCES:**

**PHILLIPS & ASSOCIATES, PLLC**
Attorneys for Plaintiff
45 Broadway, Suite 620
New York, New York 10006
By:    Alex Umansky, Esq.

**STARK & STARK**
Attorneys for Defendants
993 Lenox Drive
Lawrenceville, New Jersey 08648
By:    Scott I. Unger, Esq.

**HURLEY, Senior District Judge:**

       Plaintiff Michael Scott ("Plaintiff" or "Scott") brings this action against his former employer ProClaim America, Inc. d/b/a ESISProClaim. ("ProClaim"), Esis, Inc. ("Esis"), and Ace Group Holdings ("Ace"), as well as his former supervisors Carl Ferdenzi ("Ferdenzi"), Heather Roy ("Roy"), and Candace Kainer ("Kainer") for discrimination on the basis of medical disability and retaliatory discharge, pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601. Presently before the Court is Roy and Kainer's motion to dismiss for lack of

1

personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). For the reasons set forth below, the motion to dismiss is granted.

## BACKGROUND

The following facts are taken from Plaintiff's Complaint and are presumed to be true for purposes of Defendants' present Motion.

Plaintiff Michael Scott worked full-time for Defendants ProClaim America, Inc., ESIS, Inc., and ACE[1] as a "Senior Claim Director" in Melville, New York. (Compl. ¶ 11; ¶ 24.) His responsibilities consisted of managing complex professional liability claims. (*Id.* ¶ 25.) During this time, Ferdenzi, who held the position of "Executive Vice President," was Plaintiff's supervisor. (*Id.* ¶¶ 12-13.) Plaintiff alleges that Roy, a "Claims Manager" and Kainer, an "HR Manager," also supervised him. (*Id.* ¶¶ 14-17.)

In November, 2013, Plaintiff fell and hit his head, resulting in severe headaches and dizziness. (*Id.* ¶ 29.) While receiving medical treatment for this fall, on or about the evening of December 11, 2013, Plaintiff's doctor found a Cholesteatoma in his left ear and removed it. (*Id.* ¶ 33.) On the same day, Plaintiff informed Ferdenzi of this surgery. (*Id.* ¶ 34.)

On December 18, 2013, Plaintiff sent an email to Ferdenzi and Kainer, who worked at the corporate Headquarters of the company in Houston, Texas[2], in which he stated, "[a]s discussed, I had surgery last Wed. to remove a tumor in my left ear. I have tried as best I could to work through the pain and dizziness since last week but am unable to do so . . . . Three (3) new cases

---

[1] Plaintiff alleges that ProClaim, Esis, and Ace are "integrated employers," meaning they "have common management, share financial control of all companies, share centralized control of labor relations, and share employees." (Compl. ¶ 10.)

[2] Kainer states in her affidavit that at all relevant times, she worked in ProClaim's corporate headquarters in Houston, Texas. (Kainer Decl. ¶ 4.) Plaintiff does not dispute this fact.

2

came in for Brooklyn and accordingly, I am dropping them off with you . . . . I will advise when I am medically cleared to return." (*Id*. ¶ 35.) On the same day, Plaintiff asked Ferdenzi if he could postpone a meeting originally scheduled for the following day, but Ferdenzi refused. (*Id*. ¶¶ 36-37.)

The next day, Plaintiff was diagnosed with a left ear infection as well as post-concussion syndrome. (*Id*. ¶ 38.) Plaintiff informed Ferdenzi of these diagnoses the same day. (*Id*. ¶ 39.) On December 19, 2013, however, Ferdenzi issued Scott a Performance Written Warning in which Ferdenzi explained that Plaintiff was "being placed on warning for a period of up to 90 days." (*Id*. ¶ 40.) Plaintiff sent Ferdenzi a request that he rescind the warning, however, Ferdenzi did not respond (*Id*. ¶ 42.)

On December 26, 2013, Plaintiff informed Defendants that he had to take a medical leave of absence since his condition was not improving. (*Id*. ¶ 43.) He submitted a letter from his doctor confirming his diagnoses and began medical leave that day. (*Id*. ¶¶ 43-44.) On December 30, 2013, Plaintiff received a letter from Defendants approving his eligibility for leave pursuant to the FMLA and confirming the receipt of the doctor's note as well as Plaintiff's submission of "sufficient certification to support [his] request for FMLA leave." (*Id*. ¶ 45.)

On January 10, 2014, Kainer sent Plaintiff an email that stated "[p]lease find attached the disability papers for the state of NY and Lincoln's Short Term Disability's papers." (*Id*. ¶ 46.) On or about January 16, 2014, Plaintiff wrote an email to Kainer and Roy, in which he stated "I'm heading over to the ENT this afternoon, so I hope to have some sense of where I'm heading in that regard. I actually have two (2) issues, one is the ENT issue and the other the Post Concussion so I may need two docs certs. Do we need just one or two?" Kainer never responded to this email. (*Id*. ¶ 47.)

On January 17, 2014, Roy, who also worked at the Texas Headquarters,[3] called Plaintiff and terminated his employment without providing any reason. (*Id.* ¶ 48.) In the same conversation, Roy stated that the Defendants would provide Plaintiff with a severance payment and a neutral employment reference, and they agreed not to dispute unemployment benefits. (*Id.* ¶ 48.) Roy also instructed Plaintiff to send him an email memorializing the terms discussed in the phone call. *Id.* Plaintiff sent the email, however, Roy never responded. (*Id.* ¶ 49.) On January 21, 2014, Plaintiff received a letter from Roy stating "this letter will serve as our official notice to accept your resignation." (*Id.* ¶ 50.) Plaintiff, however, disputes that he ever resigned from his position, and maintains that he was terminated. (*Id.*)

## DISCUSSION

### I. Standard of Review for Motion to Dismiss

On a motion to dismiss under Rule 12(b)(2), the plaintiff bears the burden of establishing jurisdiction over the defendant. *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). Where, as here, the parties have not yet conducted discovery, plaintiff may defeat defendant's Rule 12(b)(2) motion "by making a prima facie showing of jurisdiction by way of the complaint's allegations, affidavits, and other supporting evidence." *Mortg. Funding Corp. v. Boyer Lake Pointe, L.C.*, 379 F. Supp. 2d 282, 285 (E.D.N.Y. 2005). Moreover, given the early stage of the proceedings here, the Court must view the pleadings in a light most favorable to the plaintiff, *see Sills v. The Ronald Reagan Presidential Found., Inc.*, 2009 WL 1490852, *5 (S.D.N.Y. May 27, 2009), and when evidence is presented, "doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party," *A.I.*

---

[3] Roy states in her affidavit that at all relevant times, she worked in ProClaim's corporate headquarters in Houston, Texas. (Roy Decl. ¶ 4.) Plaintiff does not dispute this fact.

4

*Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 80 (2d Cir. 1993). However, the Court is not bound by conclusory statements, without supporting facts. *Jazini v. Nissan Motor Co. Ltd.,* 148 F.3d 181, 185 (2d Cir. 1998).

II. **Plaintiff Has Not Sufficiently Demonstrated Personal Jurisdiction Over Kainer and Roy**

A federal district court exercises personal jurisdiction over a party in accordance with the law of the forum state, subject to the requirements of due process under the United States Constitution. *See Whitaker v. American Telecasting, Inc.,* 261 F.3d 196, 208 (2d Cir. 2001). In New York, courts may exercise either general or specific jurisdiction over defendants. General jurisdiction allows courts in New York to adjudicate *all* claims against an individual or a corporation, even those unrelated to its contacts with the state. *See Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014). In contrast, specific jurisdiction "depends on an affiliation between the forum [state] and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (internal quotation marks and citations omitted).

Here, Plaintiff only contends that Roy and Kainer are subject to specific jurisdiction under New York's long-arm statute, and in particular the "transacting business" provision of C.P.L.R. § 302(a)(1). That provision states that "a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state." Pursuant to this provision of the long arm statute, a "party need not be physically present in the state at the time of service" in order for the court to obtain personal jurisdiction over that party. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 787 (2d Cir.

1999).  To extend personal jurisdiction to any nonresident under Section 302(a)(1), however, two conditions must be satisfied.  First, the nonresident must have "purposely availed [himself] of the privilege of conducting activities within New York and thereby invoke[] the benefits and protections of its laws."  *Id.* (internal quotation marks and citation omitted).  Second, there must be a "substantial nexus" between the business transacted in the state of New York and the cause of action.  *Beeney v. InSightec, Inc.*, 2014 WL 3610941, at *2 (S.D.N.Y. 2014).  "Ultimately, the analysis must focus on the nature and quality of the individual defendant's contact with the forum and whether such contact has a strong relationship to the claims based on the totality of the circumstances."  *Id*. at *3.

Plaintiff's attempt to demonstrate that the Court has personal jurisdiction over Kainer is limited to the allegations in the Complaint that Kainer, located in Texas, exchanged email communications with Plaintiff Scott, located in New York, on three occasions.  These alleged communications consist of Plaintiff's December 18, 2013 email to Ferdenzi and Kainer discussing his ear surgery and inability to perform certain work, (Compl. ¶ 35), Kainer's January 10, 2014, email to Plaintiff attaching certain disability papers, (*id.* ¶ 46), and Plaintiff's January 16, 2014 email to Kainer and Roy inquiring about his need to obtain doctor certificates verifying his condition (*id.* ¶ 47).  These alleged emails do not demonstrate that Kainer transacted business in New York that was sufficiently related to Plaintiff's discrimination claims.  "[I]t is . . . well-settled that, generally, telephone and mail contacts do not constitute transacting business under the statute."  *Palace Exploration Co. v. Petroleum Dev. Co.*, 41 F Supp. 2d 427, 433 (S.D.N.Y. 1998) (internal quotation marks omitted).  Moreover, regarding the two emails from Plaintiff to Kainer discussing Plaintiff's physical condition and ability to perform work, Plaintiff has not alleged that Kainer responded to these emails in any discriminatory manner or at all engaged in

6

any discriminatory conduct directed at Plaintiff in New York. *Beeney*, 2014 WL 3610941, at *3 (finding that in discrimination case there was no personal jurisdiction over individual defendant where plaintiff did not allege that defendant engaged in any specific instances of "discriminatory conduct directed at New York"). Additionally, Kainer's single act of sending Plaintiff disability papers does not establish that Kainer "purposefully availed [herself] of the privilege of conducting activities within New York." *See Bank Brussels Lambert*, 171 F.3d at 787. Furthermore, upon review of the facts, Kainer "did not solicit business in New York, did not individually contract with any person in New York, and did not conduct any other purposeful activity within the forum that would constitute a business transaction under § 302(a)(1)." *Beeney*, 2014 WL 3610941, at *3.

The alleged communications between Roy, who was located in Texas, and the state of New York are similarly insufficient to warrant exercise of jurisdiction pursuant to Section 302(a)(1). These alleged contacts consist of Roy's receipt of an email from Plaintiff informing her of Plaintiff's visit to the ENT and inquiring about the need to obtain doctor certificates, (Compl. ¶ 47), Roy's phone call to Plaintiff on the following day in order to terminate Plaintiff's employment and Plaintiff's follow-up email, (*id.* ¶ 48), and Roy's later letter to Plaintiff as acceptance of Plaintiff's resignation (*id.* ¶ 50). As with Kainer discussed above, Plaintiff has not alleged that Roy responded in any discriminatory manner to Plaintiff's email regarding his visit to the ENT and inquiry about doctor certificates. Moreover, Roy's communication with Plaintiff regarding the decision to terminate his employment on behalf of ProClaim does not constitute the transacting of business in New York. *See Litton v Avomex, Inc.,* 2010 WL 160121 (N.D.N.Y. Jan. 14, 2010) ("telephone . . . call regarding plaintiff's termination is not enough to establish that [defendant] was physically present within the state for jurisdictional purposes of a claim of

7

discrimination and retaliation"). Here, Roy's termination phone call and resignation letter were "discrete contact[s] that terminated any association with [Plaintiff] in New York state" and did not serve to "thrust [Roy] into New York." *Gianino v. Panacya, Inc.*, 2000 WL 1224810, at * 8 (S.D.N.Y. 2000). Accordingly, Plaintiff has failed to demonstrate that there is a sufficient basis for the exercise of jurisdiction over Kainer and Roy in New York pursuant to Section 302(a)(1).

Furthermore, this case is distinguishable from the case that plaintiff primarily relies upon, *International Healthcare Exchange, Inc. v. Global Healthcare Exchange, LLC*, 470 F. Supp. 2d 345 (S.D.N.Y. 2007). In that case, the court found that there was jurisdiction over individual defendants because "work assignments that [p]laintiff claim[ed] constituted instances of illegal disparate treatment were communicated and assigned to [p]laintiff by [defendants] via telephone, email, and fax to her home office in New York" and "discussions concerning her complaints about" those assignments "took place through the same channels." *Int'l Healthcare Exch.*, 470 F. Supp. 2d at 359. Moreover, the court found that "a substantial portion of [defendants'] communications to [plaintiff] form[ed] the substantive basis for her claims against them." *Id*. The communications with Kainer and Roy at issue here, however, do not form the substantive basis of Plaintiff's claim as they consist mainly of Plaintiff's emails to Defendants describing his physical condition and do not constitute instances of discriminatory treatment. *Id*. at 359 n. 7. Moreover, this case is unlike *Launer v. Buena Vista Winer, Inc.*, 916 F. Supp. 204, 209-10 (E.D.N.Y. 1996), another case relied upon by Plaintiff, because while in that case, the decision to terminate plaintiff was actually made in New York, here Plaintiff has not presented any facts suggesting that the decision to terminate Plaintiff occurred in New York, let alone that Roy and Kainer participated in that decision.

### III. Plaintiff's Request for Jurisdictional Discovery Is Denied

While this Court has discretion to order further jurisdictional discovery, *Manhattan Life Ins. Co. v. A.J. Stratton Syndicate (No. 782)*, 731 F. Supp. 587, 593 (S.D.N.Y. 1990), it finds that such further discovery is not warranted here. As discussed above, the Plaintiff has not made a prima facie showing of jurisdiction. Moreover, unlike in the cases cited by the Plaintiff where further jurisdictional discovery was warranted, here there is no dispute as to facts material to the determination of jurisdiction. *See e.g., Uebler v. Boss Media, AB*, 363 F. Supp. 2d 499, 506-07 (E.D.N.Y. 2005); *Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 194 (S.D.N.Y. 2000). Neither is the current case like *Winston & Strawn v. Dong Won Securities Co., Ltd*, 2002 WL 31444625 (S.D.N.Y. 2002), where facts necessary to establish personal jurisdiction were exclusively within the defendant's knowledge. Since further discovery is unlikely to shed light on the jurisdictional question, Plaintiff's request for jurisdictional discovery is denied.

### CONCLUSION

For the foregoing reasons, Defendant Kainer and Defendant Roy's motion to dismiss for lack of personal jurisdiction is granted. Kainer and Roy are hereby dismissed from this case.

**SO ORDERED.**

Dated: Central Islip, New York
June 22, 2015

/s/
Denis R. Hurley
Unites States District Judge